KOONES vs. MADDOX.—June, 1827.

An action of debt for an escape can be maintain▆ against a sheriff, who having arrested a defendant on a *capias ad satisfaciendum,* permitted him to go at large until the return day of the writ, although the sheriff then brought the defendant into court.

APPEAL from *Saint-Mary's* County Court. Action of debt for $219 95, against the appellee, formerly sheriff of that county, for an escape. The declaration stated, that in *Saint-Mary's* county court, at March term 1819, D *Koones,* (the appellant,) and *H. Koones,* in the lifetime of *H. Koones,* recovered judgment against a certain *E. Wilder* for $177 02 debt, $350 damages, and $6 65 costs. That on the 20th of March 1820, a writ of *capias ad satisfaciendum* was issued on the said judgment, directed to the defendant, (the appellee,) the then sheriff of the county. That on the 1st of April 1820, the said execution was delivered to one *T. W. Morgan,* he then being the lawful deputy of the defendant, &c. That *Morgan,* being such deputy of the defendant, on the 1st of May 1820, by virtue of the said writ, arrested and took in execution the said *Wilder,* and permitted him to go at large and escape, &c. whereby an action accrued to the plaintiff to demand and have, of and from the defendant, the said sum of $219 95 above demanded, being the debt, damages and costs, and charges aforesaid, &c. The defendant pleaded *nil debet,* and issue was joined.

At the trial the plaintiff proved that judgment was obtained in *Saint-Mary's* county court by the plaintiff, and *H. Koones* his partner, in the lifetime of the said *H.* at March term 1819, for $177 02 debt, with interest, &c. and costs, against a certain *Edward Wilder.* That the said judgment was kept regularly alive; and on the 20th of March 1820, a writ of *capias ad satisfaciendum* was issued against *Wilder,* and delivered to *Maddox,* the defendant, then being the sheriff of the said county; and that *Wilder* was arrested by virtue of the said writ on the 1st of May 1820, by *Maddox,* sheriff as aforesaid, and by him on the same day set at liberty, and permitted to go at large, nobody being with him, *Wilder,* from that period until the 8th of August in the same year, when *Wilder* was brought into court by *Maddox,* sheriff as aforesaid, and ordered by the

said court to be discharged from the custody of *Maddox*, she-riff as aforesaid—he *Wilder*, having petitioned for the benefit of the insolvent laws of this state. That when the writ of *capias ad satisfaciendum* was delivered to *Maddox*, sheriff as afore-said, it was accompanied by written instructions from the plain-tiff's attorney, directing, that so soon as *Wilder* was arrested and taken on the said writ, he should be put into close confine-ment, and there detained until regularly and legally discharged. The plaintiff then prayed the court to instruct the jury, that they must find for the plaintiff. But the Court, [*Key* and *Pla-ter*, A. J.] refused to give such instruction. The plaintiff excepted; and the verdict and judgment being for the defen-dant, the plaintiff appealed to this court.

The case was argued at June term last before BUCHANAN, Ch. J. and STEPHEN, ARCHER, and DORSEY, J.

*Causin*, for the Appellant, contended, 1. That a sheriff is liable to an action for a voluntary escape upon process of exe-cution. 2. That he was liable to the full amount of the debt. The action of debt is given against a sheriff for an escape. *Jones vs Pope*, 1 *Saund*. 38. A sheriff is liable, in an action of debt, for an escape upon process of execution for the whole sum due by the original debtor—debt, interest and costs; in other words, he stands in the place of the original debtor. In support of this position the court are referred to *Hawkins vs Plomer*, 2 *W. Blk.* 1048, 1050. *Bonafous vs Walker*, 2 *T. R.* 132, 133. It is admitted, that in cases of escape upon *mesne process*, if the sheriff have the party in court at the return day of the writ, his liability is discharged; but it is denied, that in a case of voluntary escape upon final process, as the present is, that any act of the sheriff can purge the escape. *Ravenscroft vs Eyles*, 2 *Wils.* 295. *Jones vs Pope*, 1 *Saund.* 35, (note.) *Atkinson vs Matteson*, 2 *T. R.* 172. Thus, according to the *British* adjudications, it appears that the appellee is liable for the whole debt due by *Wilder* to the appellant. It remains only to be shown, that the statute which regulated the decisions referred to, has been acted under, and obtains in this state. In order to establish this position, the court are referred to *Kilty's Report of Statutes*, 221. Statutes made at *Westminster*,

1 *Rich.* II, *ch.* 12.    2 *West.* 13 *Edwd.* I, *ch.* 11.    *Pulver vs M'Intyre*, 13 *Johns. Rep.* 503.    *Kellog vs Gilbert*, 10 *Johns. Rep.* 220; and *French vs O'Neale*, 2 *Harr.* & *M'Hen.* 401.

*C. Dorsey*, for the Appellee.    It is conceded that an action of *debt* for escape upon final process, after arrest and before the return day, is given to the creditor in *England* against the sheriff by a *liberal* expansion of the language of the statute of 1 *Rich.* II, *ch.* 12.    By the common law no such action was given.    The remedy was *case*, grounded upon the official misfeasance of the sheriff, where *damages* were recovered, and not of *necessity* the *debt* due from the debtor, and on which he was in execution.    *Jones vs Pope*, 1 *Saund.* 38.    The right of the creditor in this state to sustain the action, depends on the question, whether the statute of 1 *Rich.* II, at the time of the declaration of rights, "had by experience been found applicable to the local and other circumstances of the colony."    3d *Section of the Bill of Rights.*    The statute of the 1 *Rich.* II, *chap.* 12, gives to the creditor the action of *debt* against the *warden* of the *fleet*, upon an escape out of *execution.*    The "*Warden* of the Fleet" is the gaoler of the Fleet Prison.    The *liberal* construction, therefore, of the statute is, that when a debtor is committed to the "gaoler" *in execution*, and he suffers him to escape, an action of *debt* may be sustained.    The policy of the *English* courts soon expanded the statute; and by a principle of construction familiar to their courts of enlarging the remedy in all cases of "like evil," extended it to all *prisoners*, and to all *sheriffs* and gaolers.    In the case referred to by the counsel for the appellant, of *Hawkins vs Plomer*, 2 *W. Blk.* 1048, the court applied the action of *debt* for an escape, "where there was no commitment (upon final process,) permitted, before the return day."    Thus progressively expanding the remedy in conformity to the commercial spirit of the nation, to afford to the creditors every facility of recovering their debts, and based upon that maxim adopted in the "rudeness of early times of *qui non habet in crumana ruit in corpore*," a principle reprobated by the liberal feelings of these times.    The legislative records furnish sufficient evidence that the colony deemed the statute of 1 *Richard* II, *chap.* 12, inapplicable to the local and other circumstances of the *colony;* for we find

KOONES v MADDOX.—1827.

that in 1642, *ch* 42, within 12 years after the charter, they passed a law, "providing some rule for execution." By which they enacted, that "if the sheriff, after there is a *prison* built, suffer a *party* in execution to go at liberty out of prison, without consent of the chiefest creditor, he shall be liable as in case of escape." This law was permitted to expire. In 1669, *ch.* 5, another law was passed, entitled, "An act for the relief of prisoners taken in execution;" this was repealed by 1676, *ch.* 2. The provisions of this bill cannot be ascertained from any of the compilations. In 1676, *ch.* 17, it is provided, "that when persons are taken in execution for *debt*, or on mesne process, the sheriff shall keep them by such means, and in such manner, as prisoners in *England are*, and *may* be restrained." This law was to be in force for three years, and was afterwards continued by several reviving acts until 1692, when a new law was passed, which was afterwards *repealed*. These old acts of legislation show that after *prisons* were built, the sheriff should not suffer *prisoners* to go at large without the assent of the chiefest *creditor*, thus modifying the statutory law of *England*. This, however, was abandoned, being found inconsistent with the interest of the colony, and precluding the smaller creditors deriving any benefit from a *Ca. Sa*. They then adopted the whole *English* system, and incorporated it in their laws. But the experience of a few years convinced them that the rigid system fitted for a commercial country, was not "applicable" to an infant colony, that required the aid of all for the protection of all, and that it could not permit its weakness to be added to by the confinement of its citizens in the prisons. The court have by this trial an abandonment of the *English* principles—a legislative declaration that the statute of 1 *Rich.* II, *ch.* 12, was not found applicable to the colonist. If the affirmative declarations of the colonial legislature sustain the position, that at that time the *English* system was repealed, it is contended that the court have no evidence that the system was afterwards recognized by the people, the legislature, or the judiciary. It is contended, that this court have no other criterion of deciding, that a statute has been deemed applicable to the local and other circumstances of the state, than a decision of a *court recognizing* the statute. In *Whittington v Polk*, 1 *Harr. &*

*Johns.* 250, the court say, that "it does not appear to the court there can be any other safe criterion by which the applicability of a statute to our local and other circumstances, can be ascertained and established, but that of having been used and practised under in this state." The court also say, that the statute of 32 *Henry* VIII, *ch.* 2, does not extend to this state, "the court, *not* knowing of any *judicial decision* by which the same has been adopted and introdued into this state as the law thereof." In *Dashiell v Attorney-General, 5 Harr. & Johns.* 403, the court say, that *Kilty's* Reports of the Statute, was compiled, printed and distributed, under the sanction of the state, for the use of its officers, and is a safe guide for exploring *an otherwise* very *dubious path.* In the above report the compiler notes, that the *Statute* of 1 *Rich* II, *ch.* 12, has been deemed applicable; yet he says, that the *practice* has been, (not under the statute,) but to sue either in case, or on the sheriffs bonds, where the damages are under *the control* of the jury; and he refers to no *instance* within his recollection of an *action* of *debt.* Neither the judicial records of this state, nor the recollection of the oldest practitioner, furnish a case of an action of *debt,* grounded on an escape permitted after an arrest upon final process, and before the return day, and where the sheriff has produced the body on *the return day.* This universal silence on a subject which necessarily must have arisen somewhere in the state in each and every week for upwards of a century, and where passion, revenge and interest, must have prompted to fix a liability on the sheriff, is a strong argument to prove, that in the opinion of the profession no such action can be sustained. In *Le Caux v Eden,* 2 *Douglass,* 525, *Buller,* Justice, states there is no case wherever it has been holden that such an action (not this action,) can be sustained, and if it could lie, there are such "frequent opportunities" for it, that it must have happened in every day's practice, or some instances must at least be in the memory of those who have had long experience in *Westminster Hall;* but there is not the smallest trace, or even *dictum* in any court of *England,* and this silence is a strong argument against such an action. Where a plantation or colony is settled by *English* subjects, all the *English* laws then in force are transferred to the colonies, subject, however, to such

*restrictions* and *modifications* as shall be adopted by their own *provincial judicature*, as compatible with their local and other circumstances. 5 *Jacob's Law Dictionary*, tit *Plantation*, 159. It is contended, that the admitted absence of any judicial decision on the liability of the sheriff in a similar case, and of the action of *debt* for an escape, affords a strong presumption that the provincial judicature refused to sustain the doctrine contended for, and modelled the doctrine of escape according to the universal practice of this state. It is, therefore, contended, that the *universal* and long continued *practice* of the officers of suffering a debtor arrested upon a *final* process to go at large till the return day of the process, has established a common law which the court ought to respect. The state has a common law unknown to the common law of *England*. Two instances now occur. A sheriff in *England* grants replevin, and takes bond. Here the clerk does it, without statute, and is sustained by usage. In *England* the court never grants *a retorno habendo* till judgment. Here the court grant it before judgment, without statute; the statute only regulating the practice. But if the court say that the *English* doctrine prevails, then there is no evidence that the statute 1 *Rich* II, *ch.* 12, has ever been introduced, and the party's remedy against the sheriff must be grounded on the common law—An action on the case, or on the sheriff's bond.

*Curia adv. vult.*

At this term,

**JUDGMENT REVERSED.**

## HAMMOND's EX'RS. *vs* O'HARA.—June, 1827.

To entitle the collector of the county tax to recover in his own right, from a taxable inhabitant, the amount of his assessment, such collector must show that the taxes placed in his hands for collection, had been paid over to the persons in whose favour levies had been made, or adduce some proof, showing that he had furnished such evidence to the proper tribunal for adjusting his accounts.

The circumstance, that an account presented by a collector to the levy court, was by that court, filed in the clerk's office, is no evidence that the Levy Court adopted it.

ERROR to *Anne-Arundel* County Court. This was an action of *assumpsit*. The declaration contained two counts, one for